Thacher *v.* Stevens.

—————— ✦✦✦ ——————

### HENRY C. THACHER *vs.* JOHN N. B. STEVENS.

A note payable to the order of *A* was indorsed in blank by *B* for the accommo-dation of the maker, and delivered to *A*. Before its maturity *A* indorsed it above the name of *B* and sold it in open market for a valuable consideration to *H*, who took it in good faith and without notice of any thing special in *B's* indorsement. The note was protested for non-payment and notice given to *B* as an indorser. Held, in a suit by *H* against *B* as indorser, that *B* could not show that his indorsement was anything else than an ordinary one.

ASSUMPSIT against the defendant as indorser of a promissory note; brought to the Court of Common Pleas of Hartford County. The following facts were found by a committee:—

The note in question is as follows:—

"$500. July 1, 1877. Two months after date I promise to pay to the order of James Gill Five Hundred Dollars at Ætna Nat. Bank, value received.       N. W. TAYLOR."

[Indorsed,]

"JAMES GILL,

J. N. B. STEVENS."

The defendant indorsed the note in Hartford, before delivery to the payee, at the request of the maker, for his accommodation and without consideration.   When the defendant so indorsed it the note bore no other indorsement. Afterward, and before the plaintiff purchased the note, Gill, without the knowledge of the defendant, wrote his name as indorser on the note over that of the defendant.

The plaintiff objected to all evidence offered by the defendant to prove the above facts, and the same was received subject to objection.

The plaintiff purchased the note in suit in good faith, before maturity, for a valuable consideration, and without knowledge of any of the foregoing facts, and ever since has been and is now the owner and holder of the same.

Gill resided in the city of New York, and after he had indorsed the note he transferred it in that city to some other person, who afterwards transferred it to Thomas Thacher, who resided in the city of New York, who afterwards in that city transferred it to the plaintiff.   The note was protested for non-payment at maturity, and the defendant duly notified as endorser.

Upon these facts the case was reserved for the advice of this court.

*S. W. Adams,* for the plaintiff, cited 1 Daniel on Neg. Instruments, § 707, 790, 815; 2 id., § 1405; *Bigelow* v. *Colton,* 13 Gray, 309; *Clapp* v. *Rice,* id., 403; *Thatcher* v. *West River Bank,* 19 Mich., 196.

*C. J. Cole,* for the defendant.

1. The law is settled in this state that *primâ facie* the contract of a stranger who indorses a promissory note is

Thacher *v.* Stevens.

" that the note is due and payable according to its tenor, that the maker shall be able to pay it when it comes to maturity, and that it is collectible by the use of due diligence." *Beckwith* v. *Angell,* 6 Conn., 323; *Perkins* v. *Catlin,* 11 id., 213; *Laflin* v. *Pomeroy,* id., 440; *Castle* v. *Candee,* 16 id., 234; *Holbrook* v. *Camp,* 38 id., 23.

2. Evidence of the contract made by a stranger to the note, who indorses it, has always been held admissible. It does not contradict or vary the written contract; it only ascertains what the contract in fact was. 1 Greenl. Ev., § 288; 1 Am. Lead. Cas., 322; *Rey* v. *Simpson,* 22 How., 341; and authorities before cited.

3. The defendant is not estopped from showing what the contract was as against the plaintiff. This is not an equitable defense against the indorsement which could only be shown between original parties. We say only that the contract is not what the plaintiff declares upon, but a different contract, protecting the plaintiff as completely, but in a different manner. The writing of his name by the payee over the name of the defendant was an alteration of the terms of the defendant's contract by changing the apparent relation of the parties. If the maker of a note should write it without interest, and the payee should add the words "with interest," and put it in circulation, could not the maker show that fact? If he should write it payable in three months, and it should be altered to two months, or for two thousand dollars, and it should be changed to three thousand, could not those facts be shown? The fact that an instrument has been altered from its original form may always be shown. *Burchfield* v. *Moore,* 25 Eng. L. & Eq., 123; *Gardner* v. *Walsh,* 32 id., 162; *Holmes* v. *Trumper,* 22 Mich., 427; *Fay* v. *Smith,* 1 Allen, 477; *Wade* v. *Withington,* id., 561; *Flint* v. *Craig,* 59 Barb., 319. "A promissory note, signed by the principal and surety, or a note or bill indorsed for the accommodation of another party thereto, defines the liability intended to be assumed; and any alteration changing this liability without his consent will discharge him—such as the change of the date, the amount, the time or place of payment." *Waterman* v. *Vose,*

43 Maine, 511.   See also *Wood* v. *Steele*, 6 Wall., 80; *Heff-ner* v. *Wenrich*, 32 Penn. St., 423; *Ivory* v. *Michael*, 33 Misso., 398; *Owings* v. *Arnot*, id., 406; *Presbury* v. *Michael*, id., 542; *Britton* v. *Dierker*, 46 id., 591; 2 Parsons Notes & Bills, 550.   There is a class of cases in which it has been held that leaving a blank in the body of a note, as between the amount and the word " dollars," was such negligence on the part of the maker as to estop him to deny the authority of an alteration.   Those cases differ from this in the essential particular of negligence.   The maker of a contract or a note has a right to rely upon the law of the state and the honesty ·of the public.   He may assume that the holder of a note will not write "with interest," though ample space be left; that he will not write after " with interest " the words " at ten per cent. ;" that the date will not be changed, nor the terms of the contract altered, either innocently or fraudulently.   The common law of this state from time immemorial defined and estab-lished by the decision of the Superior Court and inferior courts, has sanctioned contracts of the character made by the defendant.   Negligence has never been imputed to him in any case for so making a contract.   If the holder has written over the signature a different contract, he has been permitted to show what the real contract was.

PARDEE, J.   N. W. Taylor made his promissory note for $500 payable at bank two months from date to the order of James Gill; at the request and for the accommodation of the maker the defendant indorsed it in blank; then it was deliv-ered to the payee, who placed his own blank indorsement above that of the defendant, and transferred it to a third person, who transferred it to a fourth in the city of New York, from whom the plaintiff purchased it for a valuable consideration before maturity, believing the indorsements to be in order of time as they were in order of place.   Present-ment and demand were made; notice of non-payment was given to the defendant as the second indorser, and this suit is instituted against him in that character.

The defendant insists that he is a guarantor that the note

is due and payable according to its tenor, that the maker shall be able to pay it at maturity, and that it is collectible by the use of due diligence; that therefore there is a variance between the contract alleged and that which he made, and that he has a right to prove the variance by parol testimony.

The case is reserved for the advice of this court.

The evidence is inadmissible. The office of a negotiable note is to pass from holder to holder as a medium of payment. The defendant is to be charged with knowledge, when he made his unrestricted indorsement for the accommodation of the maker and the security of the payee, that the latter intended to and would perfect the negotiability of the note by indorsing it in due order of place above that of his own, and transfer it in open market; and the defendant is to be held as having authorized the payee to make him responsible as second indorser, and therefore to have barred himself from putting parol restrictions upon the contract implied from the place of his name, as against a purchaser before maturity for a valuable consideration without notice.

Of such an indorser, in *Crozer* v. *Chambers*, Spencer's Rep., (N. Jersey,) 256, Chief Justice Hornblower said, that the " mere signature creates no commercial contract whatever, though it may subject him to the liability of second indorser if the payee thinks proper to indorse it and put it in circulation and the note should get into the hands of an innocent *bonâ fide* holder."

In *Schneider* v. *Schiffran*, 20 Missouri, 511, the defendant having been sued upon his blank indorsement of a note of which he was not the payee, offered parol testimony as to the real contract which he had entered into. The court refused to receive it, saying " the question in the present case is whether this may also be shown against a party who took the note before it was due, in the usual course of business, and for value and without notice; and we are of opinion that it cannot, and that such a decision would be contrary to the principles and policy of the law in relation to negotiable paper, and generally result in throwing the loss from the party who occasioned it by his own act, upon a stranger, who relied upon what he found upon the note."

In *Sturtevant* v. *Randall*, 53 Maine, 157, it is said as follows : " Undoubtedly the order in which the names stand upon the back of the note would be primâ facie evidence of the relative time at which the indorsements were made, and it may well be that, as against an innocent indorsee for value, in regular course of business, the policy which aims to facilitate commercial intercourse by means of negotiable paper would prohibit a defendant from asserting any extrinsic matter to vary the apparent liability ; but, as between the original and immediate parties to the contract, or those occupying their position and having their rights only, the consideration of the contract is always the subject of inquiry until once judicially determined."

In *Phelps* v. *Vischer*, 50 N. York, 69, S & R made a note payable to the order of Brown, which was indorsed before delivery to the payee by Bennett, the defendant's testator ; then the payee wrote upon the back these words :—" For the purpose of making this note negotiable I indorse the same payable to the order of Solomon Bennett without recourse to me as indorser ; " signed his name thereto, and transferred the note to the plaintiff, who had knowledge that Bennett's indorsement was prior in time to that of the payee. The court said that " if the plaintiff had purchased the note without knowledge of the order of indorsements he might have supposed that Brown first indorsed it and would then have been a *bonâ fide* holder."

We do not deny the admissibility of the evidence as between the defendant and the payee. In *Beckwith* v. *Angell*, 6 Conn., 323, the defendant made a blank indorsement upon a note long overdue, upon the agreement of the plaintiff, the holder, to give further time ; the latter wrote a guaranty over the defendant's name ; and as between them he was allowed to prove the contract by parol. In *Perkins* v. *Catlin*, 11 Conn., 213, the plaintiff was the payee, under a special agreement with whom the defendant made the blank indorsement sued upon. In *Laflin* v. *Pomeroy*, 11 Conn., 440, the plaintiffs, payees, paid the defendant for his blank indorsement. In *Castle* v. *Candee*, 16 Conn., 234, the plaintiff was the payee. In *Holbrook* v. *Camp*, 38 Conn., 23, Holbrook indorsed in

blank a note payable to one Downs for the accommodation of the maker. Camp bought it *after maturity* and undertook to use it by way of set-off against a claim in favor of Holbrook.

In a note to section 133 in the last edition of Story on Promissory Notes there are cited a large number of decisions by courts in our own country and in England as to the legal effect of an indorsement in blank upon a promissory note payable to order by a person who at the time of indorsing is neither payee nor holder. We believe we are not mistaken in saying that in every case cited the plaintiff was either the payee or the holder of the note with notice as to the time when and the contract under which the defendant made his irregular indorsement; therefore the author must be understood as treating only of such instances.

In Daniel on Negotiable Instruments, sec. 712, it is said: "Whether or not there is the same liberty in the use of parol proof when the note has been passed to a *bonâ fide* holder for value, and without notice, is a question upon which the authorities are by no means uniform. Some of them confine parol proof to cases in which the note is still in the hands of the original party to whom it was first delivered as a valid instrument; but others declare that it is equally competent in a suit by a *bonâ fide* holder." Several cases are cited in support of the text. But we think we are not mistaken when we say that in every one of these the plaintiff, at the taking of the note, had notice of the irregular indorsement; therefore no one of them is an authority for the proposition that the defendant in the case before us is not liable in this action to the plaintiff, a *bonâ fide* holder without notice.

Our attention has also been called to the case of *Good* v. *Martin*, 5 Otto, 90, in which the marginal note is that "where a promissory note made payable to a particular person or order is first indorsed by a third person, such third person is held to be an original promissor, guarantor, or indorser, according to the nature of the transaction and the understanding of the parties at the time the transaction took place;" and that "parol evidence is admissible to show the circumstances under which he signed, as they bear upon the foregoing rule."

But this case is of the same class, and we believe that in every case cited therein as an authority the plaintiff was either payee or holder with notice. It is error to the Supreme Court of Colorado. From 1 Colorado Reports, 165, it appears that the note was transferred by the payee directly to Martin, the plaintiff below; of course, in this fact there was actual notice to the latter that the indorsement of Good was irregular and open to parol explanation. In *Third National Bank of Baltimore* v. *Lange*, 7 Reporter, No. 19, May 7th, 1879, (to appear in 48 Maryland Reps.,) the marginal note is, that "parol proof is admissible to show the character in which indorsers stand relative to the note." The plaintiff bought the note of the payee, and the court cites *Good* v. *Martin*, supra. Neither of these cases is an authority for any other proposition than that parol proof is admissible as between parties who have notice of the irregularity of the indorsement.

In the case at bar the payee embraced the opportunity afforded by the defendant and perfected the negotiability of the note by making his indorsement to stand as the first and that of the defendant as the second, so far as a stranger could know, and put it into circulation; the plaintiff bought it in the market apparently of the second holder after the defendant, possibly a bill-broker, under such circumstances as gave him no knowledge either actual or constructive of any irregularity.

If, as between himself and all persons to whom the payee may transfer a note, the irregular indorser prefers one of the two positions of guarantor or second indorser to the other, he can easily secure his preference by stating it in writing in connection with his indorsement; and in the interest of the negotiability of commercial paper it is better to compel him thus to state it than to require the holder without notice to discover it at the price of a bill of costs.

We advise the Court of Common Pleas to render judgment for the plaintiff.

In this opinion the other judges concurred; except PARK, C. J., who did not sit.